MOYER v. ANN ARBOR RAILROAD CO.

1. MASTER AND SERVANT—ASSUMPTION OF RISK — WORK OUTSIDE SCOPE OF EMPLOYMENT.

Going to meals and taking dinner to his co-employés is not outside the scope of the employment of a section hand.

2. SAME—RAILROADS—INCREASE OF HAZARD—ASSUMPTION OF RISK.

The increase of danger in riding upon an engine is an obvious risk, assumed by the servant.

3. SAME—DUTY TO PROMULGATE RULES—SYSTEM.

The fact that a rule employed by a railroad company is a modification of one used by another company, which was not shown to result in greater safety to life and property than the defendant's rule would secure, does not justify the submission of the question of its sufficiency to the jury, where obedience to the rule adopted by defendant would have averted the injury.

Error to Gratiot; Searl, J. Submitted January 11, 1910. (Docket No. 37.) Decided February 3, 1910.

Case by John Moyer against the Ann Arbor Railroad Company for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*John T. Mathews* and *Stone & Watson*, for appellant.

*Benjamin S. Warren* and *Codd & Drake*, for appellee.

BROOKE, J. Plaintiff's action is based upon the same facts, considered by this court, in the case of *Veit* v. *Railroad Co.*, 150 Mich. 358 (114 N. W. 233), where a full statement thereof will be found. In the *Veit Case*, the plaintiff was an engineer of one of the colliding trains; in the case at bar, the plaintiff was a section hand of six or seven years' experience. The wreck at Bagnall was

within the limits of the section upon which plaintiff was employed. He was set to work by Cooley, his section boss, to help clear away the wreck. After working about half an hour, plaintiff was ordered by Cooley to get on the engine of No. 42 and go home (to Mesick) for his dinner, and to bring the dinners of the other section hands back to them. Plaintiff obeyed the order, and the engine proceeded to Mesick. Plaintiff received the injury complained of when the engine upon which he was riding collided with engine No. 7, which Veit was driving.

A verdict having been directed for defendant, plaintiff urges reversal in this court upon two grounds:

(1) That the court erred in instructing the jury that the plaintiff was a fellow-servant of Moody and Jepson.
(2) In refusing to submit to the jury the negligence of the defendant, with respect to its rules, adopted and in use at the time of the accident.

Plaintiff claims that, even if it be held that he was a fellow-servant of Moody and Jepson, he did not assume the risk of their negligence, because, in ordering him to go upon the engine and bring meals back to his fellows, defendant imposed upon him a dangerous duty, and one without the scope of his employment. We are of opinion that this position cannot be maintained. The going home to his own dinner, and the bringing of meals to his fellow laborers, was an incident of his employment. During his long employment as a section hand he had frequently ridden upon trains to and from his labor, but never before had ridden upon an engine in the performance of his duty.

It would scarcely be claimed, we think, that, if plaintiff had been injured while riding on passenger train No. 7, the train which collided with the engine upon which he was riding, and which was carrying many employés of defendant to the scene of the wreck, he had not assumed the risk of injury upon said train due to the negligence of fellow-servants. Travel to and from scenes of disaster upon railways is clearly an incident of the employment of an employé engaged in the maintenance of the track and

roadbed, and it seems obvious that travel to and from the wreck, for the purpose of bringing food to those engaged in its removal, is likewise *necessarily* an incident of such employment. Does the fact that plaintiff rode upon the engine, instead of upon the train, modify this rule? We do not think it does. Travel upon a locomotive is of course more dangerous than travel in the train because, in the event of a collision, the passenger is nearer the point of impact. But this increase of danger is an obvious one, readily to be appreciated even by the inexperienced. A man of plaintiff's age and experience must have known and appreciated it. *Wheeler* v. *Berry*, 95 Mich. 250 (54 N. W. 876); *Gavigan* v. *Railway Co.*, 110 Mich. 71 (67 N. W. 1097), and cases cited.

2 Labatt on Master and Servant, § 624, states the rule as follows:

"A servant who, at the time of the accident in suit, was being transported on a railway car, or other vehicle furnished for the purpose of facilitating the performance of his work, is deemed to have been injured in the course of his employment, and therefore cannot recover if the injury was the result of a risk known to and appreciated by him. * * * The character of the train on which the servant was being transported is immaterial, provided it was being used as a means of conveyance to take him, in the course of the performance of his contract, to or from the place where his duties called him." Citing cases.

See, also, 26 Cyc. p. 1351, and cases cited; 34 Cent. Dig. §§ 501–503.

Plaintiff offered in evidence the rule books of the Pere Marquette Railroad Company, and the Chicago & Northwestern Railway Company, with special reference to rule No. 99, which differed in some respects from rule No. 99, adopted and in use by the defendant at the time of the accident. These exhibits have not been returned with the record, as was stipulated, but the fact is unimportant, for we must hold that the court below was correct in holding that the question of whether rule No. 99, as adopted by another company, would have afforded

greater protection to plaintiff than did the one in use by defendant, was not a proper one to be submitted to the jury, upon this record. In *Seccombe* v. *Railway*, 133 Mich. 170 (94 N. W. 747), this court said (quoting from *Niles* v. *Railroad Co.*, 14 App. Div. [N. Y.] 58 [43 N. Y. Supp. 751]):

" The doctrine imposing liability upon railroad companies for failure to adopt particular rules, the necessity for which was not apparent to them, should not be unduly or unreasonably extended. And since the company has a paramount interest in protecting its property from injury or destruction, and also in avoiding all liability for damages to employés and passengers, * * * these considerations must have some weight in determining whether the omission to promulgate a particular rule constitutes a neglect of duty in not being able to foresee certain contingencies."

This court further cited with approval *Berrigan* v. *Railroad Co.*, 131 N. Y. 582 (30 N. E. 57), and *Morgan* v. *Iron Co.*, 133 N. Y. 666 (31 N. E. 234). See, also, *Whalen* v. *Railroad Co.*, 114 Mich. 512 (72 N. W. 323), *Enright* v. *Railway Co.*, 93 Mich. 409 (53 N. W. 636), and *Shadford* v. *Railway Co.*, 111 Mich. 390 (69 N. W. 661).

It was admitted that rule 99 in a modified form was in force on the Pere Marquette Railroad, but no testimony was introduced tending to show that such modification resulted in greater safety to life and property than did rule 99, as in use by defendant, and nearly all other railroads. Veit's testimony has been considered, but we are of opinion that it was not such testimony as under the authorities would warrant the court in submitting the question of the sufficiency of rule 99 to a jury. See *Berrigan* v. *Railroad Co.*, *supra*. But another reason exists why the question should not have been submitted. As this court found in considering the case of *Veit* v. *Railroad Co.*, *supra*, the accident resulted from a disregard by the train crew of No. 42 of "the well-understood rules made largely for the protection of their own lives."

Had the employés of defendant, fellow-servants of plaintiff, obeyed rule No. 99, as in use by defendant company at the time of the accident, no accident would have occurred. The defendant "had the right to rely upon the observance of the rules by the trainmen." *Veit Case.* See, also, 26 Cyc. p. 1170, and cases cited.

Judgment affirmed.

HOOKER, MOORE, MCALVAY, and BLAIR, JJ., concurred.