GALVESTON, H. & S. A. RY. CO. v. SUMMERS. (No. 1816.)*

(Court of Civil Appeals of Texas. El Paso. Nov. 25, 1925. Rehearing Denied Dec. 17, 1925.)

1. Damages ⬡➡170—Evidence injured railroad employee was married inadmissible.

In action by railroad employee for personal injuries, evidence that plaintiff was married is inadmissible as immaterial and irrelevant.

2. Appeal and error ⬡➡1052(5)—Admission of evidence that injured railroad employee was married held not prejudicial.

In action by railroad employee, 27 years old, for injuries resulting in amputation of foot between the ankle and knee, admission of evidence that he was a married man, and refusal to instruct jury to disregard it, although erroneous, held not prejudicial, verdict not being excessive.

3. Damages ⬡➡132(9)—$15,000 not excessive for loss of foot and part of leg.

$15,000 held not excessive for injuries resulting in amputation of leg between ankle and knee of man of 27, earning from $175 to $180 per month as a switchman, with a fair prospect of an increase.

4. Appeal and error ⬡➡1060(4)—Argument of counsel that injured railroad employee was married held not prejudicial.

In action by railroad employee, 27 years old, for injuries resulting in amputation of leg between ankle and knee, argument of counsel that jury in assessing verdict should consider that plaintiff was a young man having a family, which court instructed jury to disregard, held not so prejudicial as to require reversal, as verdict was not excessive.

5. Appeal and error ⬡➡977(1)—New trial ⬡➡6—New trial discretionary; trial court's action not reversed, except for abuse of discretion.

Action of the trial court on a motion for new trial, is largely discretionary, and will not be reversed, except for an abuse of that discretion.

6. New trial ⬡➡140(3)—Refusal of new trial, sought for misconduct of jury, not abuse of discretion under evidence.

Where jury first determined railroad's liability for injuries to switchman, and then considered question of damage, overruling of motion for new trial sought because of alleged misconduct of jury in discussing whether railroad had offered compromise settlement and what amount plaintiff would have to pay as attorney fees *held* not abuse of discretion under evidence.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by William L. Summers against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, Kemp & Nagle, of El Paso, and Eugene R. Smith, of San Antonio, for appellant.

Isaacks & Lattner, of El Paso, for appellee.

WALTHALL, J. William L. Summers, as plaintiff, brought this suit against the Galveston, Harrisburg & San Antonio Railway Company for damages for personal injuries alleged to have been sustained by him while in the employ of the said railway company as a switchman, and while in the performance of his duties as switchman, in getting off a freight car, and while attempting to do so a grabiron, or handhold, gave way, throwing him to the ground and under a moving car, resulting in injuries to him, among the injuries sustained, the amputation of one of his legs between the ankle and knee. Plaintiff alleged that it was a part of his duty as switchman, and it became necessary for him to get on and off cars while in motion; that on the side of the car from which he was then descending was a grabiron, or handhold, fixed thereon for the purpose of being used by employees in boarding or alighting from said car; that in getting off said car he took hold of said grabiron, or handhold, and, while using same in descending from the car, it gave way, and he was thrown to the ground, thus proximately causing his injuries as above.

The act of negligence assigned was that the grabiron, or handhold, on the car was not securely fastened, was unsafe, insecure, and defective. The defendant railway company answered by general demurrer, general

---

⬡➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction February 10, 1926.

denial, contributory negligence, and assumed risk.

The case was tried with a jury and submitted upon the general issue. The jury found for the plaintiff, and assessed his damages at $15,000, and judgment was entered for plaintiff for said sum.

## Opinion.

[1, 2] While appellee was testifying in his own behalf, his counsel asked him: . "Are you a married man, or single man?" and before opposing counsel had an opportunity to make an objection the witness answered, "Married man," to which answer counsel for defendant objected on the ground that the question and answer were immaterial. The objection was overruled. Appellee's counsel then asked the witness, "Any children?" Whereupon counsel for appellant objected on the ground that it was not pertinent to any issue in the case. Thereupon counsel for appellee withdrew the question. Counsel for appellant then stated:

"We don't want counsel through those tactics to introduce improper testimony and withdraw it—it is highly improper—and ask the court to instruct the jury."

The court refused to instruct the jury, to which refusal appellant excepted.

Appellant presents several propositions assigning error on the refusal of the court to instruct the jury as requested, on the several grounds that, under the charge of the court, appellee's measure of damages was limited to recovery for pain and mental anguish, diminution of ability to labor and earn money. Whether appellee was a married man with a child was immaterial, irrelevant, and highly prejudicial to appellant, was calculated to inflame the minds of the jury, and bias them in favor of appellee, or prejudice them against appellant.

Appellant refers us to a number of cases, among them M., K. & T. Ry. Co. v. Thomas, 63 Tex. Civ. App. 312, 132 S. W. 974; Iron Works v. Stokes, 33 Tex. Civ. App. 218, 76 S. W. 231; Burrell Engineering & Construction Co. v. Grisier (Tex. Civ. App.) 189 S. W. 102; City of Belton v. Lockett (Tex. Civ. App.) 57 S. W. 687; Railway Co. v. Harrington, 62 Tex. 601; Railway Co. v. Hannig, 91 Tex. 347, 43 S. W. 508. Some of the cases referred to, and other cases we have examined, are in point, and holding such testimony in a suit of this character is inadmissible, and so prejudiced in some instances as to constitute reversible error, even where the objectionable evidence was excluded by the court.

However, the Fort Worth Court of Civil Appeals in Burrell Engineering & Construction Co. v. Grisier, supra, and in which plaintiff had testified that he had a wife and two babies, and in the presence of the jury, after the court had sustained the objection to the evidence by remarks made, insisted upon the plaintiff's right to have the stricken evidence heard, and, after referring to some of the other cases above recited (Railway v. Thomas, and Railway v. Hannig), said:

"It is also well settled that not every error committed in the trial of a case will cause a reversal, and that if it reasonably appears from the record that an error probably did not operate to the prejudice of the complaining party, an assignment of error addressed thereto will be overruled. * * * After a careful consideration of the evidence relating to defendant's alleged liability and the injuries sustained by the plaintiff, the amount of damages allowed by the jury, we are unable to say that the evidence introduced and the remarks of counsel referred to would be a sufficient ground for reversal of the judgment, and, accordingly, the assignment of error now under discussion is overruled. Smyth v. Caswell, 67 Tex. 567, 4 S. W. 848; Wells Fargo v. Benjamin (Tex. Civ. App.) 165 S. W. 120; Id. [107 Tex. 331] 179 S. W. 513."

A writ of error was granted; the case reviewed; and the result reported in 111 Tex. 477, 240 S. W. 899. It was insisted before the Supreme Court, among other matters not necessary to state here, that the statement of appellee that he had a wife and two babies, and the remarks of counsel before the jury, after the court had excluded the evidence of appellee that he had a wife and two children, and to the effect that the jury had a right to know whether or not a man was married, and similar remarks, was reversible error. After stating that the courts of this state had held that testimony of the character involved was inadmissible, and in some cases prejudicial to such extent as to constitute reversible error, the court, speaking through Judge Cureton, said:

"But in view of rule 62a, the mere admission of the evidence in a particular case does not, of itself, constitute reversible error. Something more must appear."

The opinion then referred to the case of Weatherford M. W. & N. W. Ry. Co. v. Thomas (Tex. Civ. App.) 175 S. W. 822, in which error was assigned to the admission, over objection, of the evidence of appellee, Thomas, as follows:

"I am a married man.

"Q. Have you a family? A. Yes; one boy."

The Fort Worth court, after referring to several cases holding that similar evidence to that above had been held to constitute reversible error, but that such decisions were prior to rule 62a, concluded that the error in admitting the evidence ought not to require the reversal of the judgment; that its prejudicial tendency was to enhance the amount of the recovery through motives of sympathy, that there was nothing in the record otherwise indicating a probability that the sympathies of the jury were improperly aroused; and that the verdict of the jury

did not appear to be excessive; and overruled the assignment. A writ of error was refused in that case. Judge Cureton, after commenting on the above Thomas Case, reverted to the case then under consideration, and said:

"In view of the complaint made as to the admission of the testimony of defendant in error that he was a man of family, having a wife and two children, we have carefully examined the evidence as to the extent of his injuries, and we have concluded that in arriving at the verdict the jury were not probably influenced by the testimony objected to or the action of counsel with reference thereto. There is nothing in the record to indicate that the jury was affected by sympathy for defendant in error, or by any influence except the evidence actually admitted. We are of the opinion that the error complained of did not amount. to such a denial of the rights of plaintiff in error as was reasonably calculated to cause, 'and probably did cause, the rendition of an improper verdict and, judgment in this case. The justice of this case * * * has been attained."

[3] In the instant case no question is raised by any of the propositions suggesting the want of liability of appellant for some amount. In fact, the record discloses that the only serious question of fact in the case to be determined by the jury was the amount of damages to be awarded. The jury awarded the sum of $15,000 for the loss of appellee's foot and part of his leg, amputated between the ankle and knee. Appellee was 27 years of age at the time of his injury, and was then earning as switchman an average wage of from $175 to $180 per month, with a fair prospect of an increase above that amount, which, in view of the cases we have examined, we cannot say is excessive.

[4] In his opening argument one of appellee's counsel said to the jury, in substance, that, if they should find for appellee, they should give him such a verdict as would compensate him for the injuries sustained; "he being a young man, having a family." To the latter part of the remark appellant very properly objected, and the court, without request of appellant, instructed the jury to disregard the remark, but appellant nevertheless excepted on the ground that the remark was an improper argument and calculated to unduly influence the jury and arouse their sympathy.

While we have carefully reviewed the cases referred to by appellant on the proposition, we are inclined to the opinion that the question presented is ruled by the cases already discussed. While some of the cases referred to involve the use of improper remarks and untenable and improper arguments, the issues to be determined by the jury cannot be looked to, as here, in determining the effect they may have had upon the minds of the jurors. In the cases we have discussed, the very question presented here was involved. Here, however, it might be remarked that appellee had pleaded that he was a married man with one child, and the statement had not been stricken by exception. The jury heard the petition read, and probably took it with them when they retired to their room. While the fact that a man is married and has a child or children dependent upon him for support is wholly immaterial, and reference thereto in argument is necessarily error, we cannot think a reference to so common and natural occurrence that a man of the age of appellee was a married man could arouse the sympathy of reasonably intelligent jurymen. If such condition of mind would necessarily follow from a bare knowledge of such facts, or reference to them, it would seem that a similar condition of mind would likewise follow should a wife and child of a litigant attend upon the trial of a case where a suit for damages for personal injuries was being tried.

[5, 6] Appellant complains of misconduct on the part of the jurors, and insists that by reason thereof the verdict was not the result of deliberation on their part based on the court's charge. It is insisted that the jurors discussed whether a compromise had been offered appellee, and that one or more of the jurors discussed the fact that appellee would have to pay from one-fourth to one-third, and possibly more, of whatever verdict was awarded to him as attorney fees, and that such misconduct operated to its prejudice, and rendered the verdict unlawful. The matter of the misconduct of the jury was presented to the court in support of appellant's motion for a new trial. It seems that all of the jurors were recalled and testified.

The action of the trial court on the motion for a new trial is largely a matter of discretion with the trial. court, and the question here is on the abuse of that discretion in overruling the motion.

It seems from the evidence taken on the motion for new trial that all of the jurors first agreed that appellee was entitled to recover damages, and that whatever was said as to compromise or attorney fees was said by some of the jurors in the discussion as to the amount to be awarded. One juror at first voted as low as $5,000, and others as large as $30,000. The evidence is lengthy, and we have read it carefully, but for the sake of brevity will not reproduce it in detail. Some of the jurors did not hear compromise or attorney fees mentioned during the discussion. More than one juror said that what was remarked about a compromise was some one asked whether or not the railroad had offered a settlement, and that the foreman and two or three others immediately answered that "you had better not ask such questions, or say anything about it," and that any reference thereto was dropped immediately. Several heard remarks made in the discussion as to what appellee would get after paying all expenses, attorney fees in-

cluded. The evidence discloses that some of the jurors heard attorney fees mentioned; others did not. Those who did are not agreed as to just what was said. Of those who heard attorney fees mentioned, some of them said they wanted appellee to have such sum after all expenses were deducted, attorney fees included, as would net him $75 or $80 per month, but of such jurors who heard discussed attorney fees some said:

"We didn't base our verdict upon this discussion of attorney's fees. We gave the verdict according to the charge the court gave and the evidence in the case. We figured the man was entitled to that."

The case of St. Louis, S. W. Ry. Co. of Texas v. Robinson, 274 S. W. 263, by the Texarkana court, is very similar in its facts on the question of the improper consideration by the jury of attorney fees, holding that the determination of that question, in its final analysis, rests largely in the sound discretion of the trial judge. He heard the statement of all twelve jurors, and on their evidence overruled the motion for a new trial. We cannot say, after a careful review of the evidence, and in view of the amount of the verdict, that the jurors were influenced by any improper motives as to the amount the appellee should recover.

Finding no reversible error, the case is affirmed.